Thank you, your honors. My name is David Ness and I represent the appellant, Mr. Charles Fleck. Mr. Fleck was convicted of misprison of a felony and sentenced to two years of probation. One of the conditions imposed upon him required that he obtain permission from either his probation officer or the court before leaving the judicial district. When he approached the court to ask for permission to do that, specifically to go to Canada for work-related purposes That's a little different than leaving the district, isn't it? It's broader, yes, I would agree with that. But nevertheless, when he approached the court for permission to travel to Canada for business purposes, the court not only denied his request, but the court also effectively modified the conditions of his probation to prohibit any sort of international travel. The court took his passport away from him. Well, that didn't modify anything because he couldn't leave the district without permission. So saying you can't go abroad, how does that modify a condition? Well, he couldn't leave without permission, and then effectively what the court did was broaden the conditions of his probation to effectively say under no circumstances can you leave the United States. Well, he didn't really say that. I thought after all this happened there was some discussion with the government and some thought that you'd come back and maybe be a little more specific about what kind of job requirements you might have and why you might need to leave the country, and that the district court was open to that. The district court wanted more concrete evidence, right? Well, and we filed the motion. We explained exactly what Mr. Fleck wanted to do. So you're talking about your original motion. Well, in both. We filed not only the first motion, and that was where we explained that Mr. Fleck had work up in Canada. I thought you withdrew your second motion. We withdrew the second motion after because, I mean, let me explain our reasoning for doing that. We did that because that motion was filed in conjunction with a request for an indicative ruling, and the reason why we were trying to do that is to see if we could just get this matter resolved. Remember, neither the probation office nor the United States government objected to our request for travel. What happened after we filed it. But they're not the decider, right? They are not. And what did the judge want? What did he tell you he wanted evidence-wise? Well, he wanted a laundry list of things, but, I mean. Didn't he want more specifics about it as opposed to my employer does this and I might need to travel to Canada and generalities? Didn't he want more specifics about why and when? Here's what he wanted. He wanted testimony from Fleck's employer that the travel was essential, that what he needed to do, which was actually on-site building, couldn't be accomplished by mail or telephone, for the employer to testify whether someone else could be dispatched to Canada and whether or not Fleck's job was jeopardized by his inability to travel. He wanted a declaration. That sounds pretty reasonable to me. Why didn't you go get that information? Well, and that's what I was trying to explain. When we filed the request for an indicative ruling, the court never did give us a statement that would allow us to come back up to this court and ask this court for a remand. The request for an indicative. I am not hearing. I'm struggling. I'm not hearing an answer to Judge McKeon's question. What was wrong with supplying the information that Judge Haddon wanted in order to decide whether to grant this permission to your client? First of all, that wasn't all that he wanted. Second of all, well, let's assume, for the purpose of discussion, that the list you just gave is the complete list, okay? Was that ever provided to the judge? Well, remember at the first question asked for a yes or no. No, but Mr. Fleck was not allowed to testify. At the first hearing, counsel tried to offer the court that information. Mr. Fleck was not. But there was a second hearing, and what you should be hearing from this court is that it sounds to us like the second time around you were going to get the best you could get short of an actual decision from Judge Haddon, who wasn't quick to give you the permission that your client wanted to have. But I'm puzzled, as my colleagues appear to be, as to what more you possibly could hope to obtain on appeal than instructions to go back and do what the judge was apparently prepared to do the second time around. What was wrong with the second time around? Judge, we weren't even sure. We didn't think the court had jurisdiction to hear it, that we could come up to this court and ask for a remand. You have he denies it. There's not a lot in the record. Now it's up to us with a pretty thin record and on abuse of discretion. And at any time you could have either withdrawn the appeal, gone back, gotten another order. You refiled the motion. What the judge was saying is, you know, I don't necessarily want to hear from Mr. Fleck. I want to hear from the employer because I want to see what's up here. And that's pretty reasonable. And if you don't succeed here, that's something that if he really needs to travel to Canada, he could have had a long time ago. So when I look when this appeal was filed, the passage of time just means that information has been sitting presumably in the hands of the employer. So, I mean, maybe I'm missing something, but there's ‑‑ I read all this and I couldn't understand why you wouldn't have gone back to the judge with an affidavit from the employer. It wasn't ‑‑ he wanted testimony from Mr. Fleck's employer. He wanted declarations from the Department of State and or Homeland Security. He wanted ‑‑ What's wrong with any of those things? Well, number one, I don't think that there ‑‑ there's nothing in the law that would indicate that someone under supervision can't travel internationally. In fact, cases that we cited in our brief indicated that. Including someone who's been involved in the interstate transportation of stolen motor vehicles? Well, I mean, if you look at some of the other cases, you know, for example, the Portensky case, that person wanted to travel to Russia and he had been convicted of failure to pay excise taxes in fraud on the United States government. You know, so ‑‑ I think what we're saying is that, you know, if you'd gone back and said, Judge, look, here's the information from the employer. Here's what he really needs to do. Maybe we don't need the Homeland Security. Maybe we don't need the Department of State. And then you'd be up here on a record that at least showed you'd made a good faith effort to explain why specifically he needs to go and his employer backed it up. But now we're here on the thinnest record arguing against a vacuum, in effect. Well, I mean, we did try to provide that. And if you read especially the transcript of that second hearing, Judge Hadley ‑‑ When you said you tried to provide it, did you ever provide an affidavit from the employer or ask him to show up to testify? No. And the answer is no, right? So when you say you attempted to provide it, maybe I'm just ‑‑ it's like we're talking past each other, and I want to make sure I got the facts right. Okay. No, we never did call his employer over. I mean, we never did that. You know, I would state that, you know, Mr. Fleck's employer was upset about this, for one, because Mr. Fleck had been allowed to travel I think twice while he was on pretrial release up to Canada to do this very same thing. That's when he was presumed to be innocent, correct? Sure. But you can also, you know, I would also argue that he probably presented, to the extent there was any reason to think he was a flight risk, there would be a greater reason then than there was when he was serving his two years probation. We're not suggesting, and this case isn't about denying, I mean, the district court could grant permission, and we're not saying, no, you can never grant permission. But what we have here, as Judge McEwen indicated, is a very thin record. An effort or an opportunity was there to develop a better record for whatever reason that didn't happen, and so we're now stuck basically with your request to tell the district court, he's got to let your client leave the country based on almost no record at all. That's a tough sell. No, but I think what this court can do, too, is reverse and remand it with some instructions to the court on how he should decide these issues. Well, that's what I said a minute ago, though. That's basically saying you're asking for us to tell the district court to do what he appeared to have offered to have done that didn't happen. And I'm adrift as to why we're here, because the most you can get, it seems to me, is exactly what was being offered to you several months ago by the district court, which for whatever reason didn't happen. You know, I would just say, given the conditions that the judge was placing on us, we were extremely concerned that he was going to deny the motion. We didn't know where that would put us procedurally on appeal at that point. We just didn't know, and we didn't want to mess this up procedurally more than it already was. I understand. I think you've used all your time. We appreciate the argument. Let's hear from the government. Good morning, Your Honors. My name is Jessica Bentley. I'm representing the United States out of the District of Montana. May it please the Court. The district court's ruling here should be affirmed. The district court did not abuse its discretion when it denied Mr. Fleck's request to modify the conditions of probation, which did restrict his travel. The court also did not plainly err when it required Mr. Fleck to turn over his passport. Essentially you're in somewhat, your office is in a somewhat awkward position, because the judge chewed your side out as much as he chewed out the defense side. He's an equal opportunity chewer in this case. That is correct, Your Honor. And your office was cooperating and trying to work out a resolution that opened the door to the second time around. From your perspective, what happened the second time that causes us to be here instead of that taking place in district court some months ago? Your Honor, to be frank, the status conference on February 12th of this year, when the court set that hearing, was very straightforward. Judge Haddon was reasonable in his requests. He laid out specifically what requests he wanted of both the government and the defendant. And it was equally burdensome on both sides to collect the information to create an adequate record for the court, which was reasonable given the circumstance. The court needed an adequate record to make a determination of whether it should grant permission for Mr. Fleck to travel to Canada for work purposes. Mr. Ness did outline what the court wanted, testimony from the employer, why the international travel was necessary, whether his employment was directly jeopardized if he did not go to Canada, and also from the government what policies are in place, whether a convicted felon can travel to Canada, things like that. Those were not unreasonable requests. Judge Haddon even said, I am willing to give this consideration. He was very clear he just wanted cooperation from the parties. He asked how much time the parties wanted in order to present that to the court. I believe the government stated two to three weeks. He in no way said he would not consider the motion. He said the parties did need to follow the Ninth Circuit's directives and obviously the deadlines, but in no way did he foreclose that he would not rule on this motion in front of the court. It was very reasonable in all courts, both for the government and the defendant. Is that still on the table? I mean, if you go back to district court, what happens next? Assuming for a moment that we don't send it back with instructions, what would happen next? Your Honor, if this court concludes that the district court did not abuse its discretion, I believe Mr. Fleck still can approach the court at any time during his probation pursuant to 18 United States Code 3563C, which does allow for a modification of the probation conditions. So if this court does find that there is no abuse of discretion, and essentially forecloses Mr. Fleck's argument, I believe he can still re-approach the court in the future, the district court. How much longer is the unsupervised release? I believe until April of 2013 or 2014. I apologize. Oh, okay. So he has some period of time here that might assist his employment? Yes, approximately seven months, I believe. Okay. Thank you. Simply, the government does ask that this court find that there was no abuse of discretion on the part of the district court, and also that it did not plainly err, and ask that the district court's ruling be affirmed. And if there are no further questions, I will cede my time. It appears not. We appreciate arguments from both counsel. The case just argued, United States v. Fleck, is submitted.
judges: Hawkins, McKeown, Clifton